*To Be Argued By Michael H. Sussman*

# 14-1457-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---------------------------------------------------------

AJAYVEER CHAPOTKAT,

*Plaintiff-Appellant,*

v.

COUNTY OF ROCKLAND, DIANE T. PHILIPPS, in her official capacity as Executive Director of the Rockland County Sewer District No. 1, and in her individual capacity,

*Defendants-Appellees,*

ROCKLAND COUNTY SEWER DISTRICT NO. 1, BOARD OF COMMISSIONERS OF THE ROCKLAND COUNTY SEWER DISTRICT NO. 1, C. SCOTT VANDERHOFF, in his official capacity as County Executive, and in his individual capacity, PATRICIA PRENDERGAST, in her official capcity as Commissioner of Personnel, and in her individual capacity,

*Defendants.*

---------------------------------------------------------

**On Appeal from an Order and Judgment of the**
**United States District Court for the Southern District of New York**

---

### APPELLANT'S BRIEF-IN-CHIEF & SPECIAL APPENDIX

---

Michael H. Sussman
SUSSMAN & WATKINS
*Attorneys for Plaintiff-Appellant*
P.O. Box 1005, 1 Railroad Ave, Ste. 3
Goshen, New York 10924
(845) 294-3991
(845) 294-1623

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………...    iii

PRELIMINARY STATEMENT…………………………………………..    1

STATEMENT OF JURISDICTION…………………………………........    2

STATEMENT OF ISSUES PRESENTED………………………………..    2

STATEMENT OF THE CASE………………………………………….....    3

STATEMENT OF FACTS………………………………………………..    5

    A. Background…………………………………………………    5

    B. Fung announces his retirement and Chapotkat and Hoffman apply
       for the PCS position………………………………………………    6

    C. Chapotkat, along with two other PCAs, suggest eliminating the PCS
       position and complain about discrimination………………………..    7

    D. Gonos and Philipps interview Chapotkat…………………………...    8

    E. The county promotes Hoffman over Chapotkat to the PCS position...    9

SUMMARY OF ARGUMENT…………………………………………...    9

STANDARD OF REVIEW………………………………………………..    11

i

ARGUMENT…………………………………………………………...   13

POINT I
THE    DISTRICT    COURT    ERRONEOUSLY    REJECTED
CHAPOTKAT'S DIRECT EVIDENCE OF AGE DISCRIMINATION
BECAUSE THAT EVIDENCE EVINCES THE DECISION MAKER'S
AGE-BASED STEREOTYPE AND PRINCIPLE OF SELECTION, NOT
AN AGE-CORRELATED CONCERN, AND A REASONABLE JURY
COULD FIND FROM THIS EVIDENCE THAT CHAPOTKAT HAVE
BEEN PROMOTED BUT FOR HIS AGE………………………………...   16

POINT II
THE    DISTRICT    COURT    ERRONEOUSLY    IGNORED
CHAPOTKAT'S    CIRCUMSTANTIAL    EVIDENCE    OF    AGE
DISCRIMINATION AND, INSTEAD, IMPROPERLY RESOLVED
FACTUAL AND CREDIBILITY DETERMINATIONS IN FAVOR OF
THE    COUNTY    IN    ACCEPTING    ITS    PROFFERED    NON-
DISCRIMINATORY REASONS DESPITE THE FACT THAT THE
RECORD CONTAINS SUFFICIENT EVIDENCE FROM WHICH A
REASONABLE JURY COULD FIND SUCH REASONS FALSE AND
PRETEXTUAL……………………………………………………   25


CONCLUSION……………………………………………………   34

CERTIFICATE OF COMPLIANCE…………………………………...   36

SPECIAL APPENDIX………………………………………………   SA-1

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)……………………………………………… 11, 12

Boston v. Blue Cross and Blue Shield of Kansas, Inc.,
    431 Fed.Appx. 763 (10th Cir. 2011)………………………….... 23

Boston v. McFadden Publ'g, Inc.,
    No. 09-Civ-457, 2010 WL 3785541 (S.D.N.Y. 2010)……………. 24

Byrnie v. Town of Cromwell Pub. Schools,
    243 F.3d 93 (2d Cir. 2001)……………………………………... 26, 33

Castelluccio v. Int'l. Bus. Machines Corp.,
    No. 09-CV-1145, 2014 WL 3696365 (D.Conn. Jul. 23, 2014)…….. 20, 21

Crowe v. Leroy Cent. Sch. Dist.,
    949 F.Supp.2d 435 (W.D.N.Y.2013)…………………………… 21, 22

Danzer v. Norden Systems, Inc.,
    151 F.3d 50 (2d Cir. 1998)……………………………………... 12, 34

Dister v. Cont'l. Group, Inc.,
    859 F.2d 1108 (2d Cir. 1988)…………………………………... 16

Gorzynski v. Jetblue Airways Corp.,
    596 F.3d 93 (2d Cir. 2010)……………………………………... 14, 15

Gross v. FBL Financial Services, Inc.,
    557 U.S. 167 (2009)…………………………………………… 15

Hazen Paper Co. v. Biggins,
    507 U.S. 604 (1993)…………………………………………… 18

Holcomb v. Iona College,
    521 F.3d 130 (2d Cir. 2008)…………………………………… 11, 12

Israel v. Geithner,
    No. 12-CV-346, 2013 WL 4016929 (E.D.N.Y. Aug. 6, 2013)………. 18, 19, 20

ITC Ltd. V. Punchgnini, Inc.,
    482 F.3d 135 (2d Cir. 2007)……………………………………… 13

Jetter v. Knothe Corp.,
    200 F.Supp.2d 254 (S.D.N.Y. 2002)………………………………… 24

Lee v. Rheem Mfg. Co.,
    432 F.3d 849 (8th Cir. 2005)……………………………………… 24

McDonnell Douglass Corp. v. Green,
    411 U.S. 792 (1973)……………………………………………… 14

Papalia v. Milrose Consultants, Inc.,
    No. 09-Civ.9257, 2011 WL 6937601, (S.D.N.Y. Dec. 29, 2011)……. 16

Patrick v. LeFevre,
    745 F.2d 153 (2d Cir. 1984)……………………………………… 13

Raskin v. Wyatt Co.,
    125 F.3d 55 (2d Cir. 1997)……………………………………….. 14

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133 (2000)……………………………………………… 12, 27, 28, 32 ,33

Savino v. Town of Southeast,
    983 F.Supp.2d 293 (S.D.N.Y. 2013)……………………………… 13, 34

Savino v. Town of Southeast,
    ---Fed.Appx.---, No. 13-4239-cv, 2014 WL 3036081
    (2d. Cir. Jul. 7, 2014)……………………………………………….. 13

Schiano v. Quality Payroll Sys.,
    445 F.3d 597 (2d Cir. 2006)……………………………………… 12

Tomassi v. Insignia Financial Group, Inc.,
    478 F.3d 111 (2d Cir. 2007)……………………………………… 17

iv

## Statutes

28 U.S.C. § 1291……………………………………………………...  2

28 U.S.C. § 1331……………………………………………………...  2

29 U.S.C. § 621…………………………………………………………..  1

29 U.S.C. § 623…………………………………………………………..  14

29 U.S.C. § 626(c)…………………………………………………….  2

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a)…………………………………………………...  11

## PRELIMINARY STATEMENT

By and through his counsel, SUSSMAN AND WATKINS, Plaintiff-Appellant AJAYVEER CHAPOTKAT respectfully submits this brief in support of his appeal from the Decision and Order of the district court for the Southern District of New York, which granted summary judgment to Defendant-Appellant COUNTY OF ROCKLAND (the "County") and dismissed Chapotkat's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

The district court below erred by holding that the age-related comments of the principal decision-maker considering Chapotkat's application for promotion during the interview process were insufficient as a matter of law to demonstrate that, but for Chapotkat's age, the County would have promoted Chapotkat instead of the substantially younger candidate actually promoted. Moreover, the district court erred by resolving factual questions and credibility determinations in favor of the County in accepting its proffered non-discriminatory reasons for not promoting Chapotkat and ignoring credible evidence refuting such reasons.

Since a reasonable jury could find that that the County's asserted reasons are false and that the decision maker's comments demonstrate that he chose not to promote Chapotkat because of his age, this Court, respectfully, should reverse and vacate the district court's Judgment and remand the matter for trial.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

As Chapotkat's claim arises under the ADEA, the district court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c). After the district court granted the County's motion for summary judgment and entered final judgment on April 7, 2014 dismissing Chapotkat's complaint in its entirety, Chapotkat timely filed his Notice of Appeal on April 28, 2014, providing this Court with jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Whether the age-related comments made to Chapotkat by the principal decision maker during the promotion process are legally sufficient to support a finding of pretext and, ultimately, age discrimination.

2. Whether the record contains sufficient evidence from which a reasonable jury could find that the County's proffered non-discriminatory reason for not promoting Chapotkat was pretext for age discrimination and that his age was the but-for cause of the County's decision not to promote him, but rather to promote a younger candidate, and, therefore, the district court erred in granting summary judgment to the County.

## STATEMENT OF THE CASE

This is an appeal from the district court's Decision and Order granting summary judgment to the County and dismissing Chapotkat's ADEA claim.

Chapotkat was born in 1958 and began working at the Rockland County Sewer District No. 1 ("Sewer District"), an administrative arm of the County, in 1987 when he was hired as Pollution Control Assistant ("PCA"). In 2010, at age fifty two, he applied for promotion to the position of Pollution Control Supervisor ("PCS"), a first-line supervisory position.

Despite his superior qualifications for the position, the County did not promote Chapotkat but, instead, appointed Linda Hoffman, another PCA who is substantially younger than him, to the PCS position. During the interview process, Chief Operator George Gonos, who was the principal decision maker in filling the PCS position, questioned Chapotkat about his age and remarked that he disliked hiring older people who are prone not to stay for a long time because he disliked the selection and hiring process, thus stating his preference for younger employees over older employees and demonstrating that his decision not to promote Chapotkat was based upon the latter's age.

Chapotkat commenced this action on September 6, 2011 and amended his Complaint on October 25, 2011 ("FAC") and again on April 23, 2012 ("SAC"), the SAC being the operative complaint. In the SAC, he alleged that the County and the

Sewer District's Executive Director, Diane Philipps, unlawfully discriminated against him on the basis of his age in violation of the ADEA when they failed to promote him because of his age.[1]

By Opinion and Order dated April 4, 2014, the district court (Hon. Nelson S. Roman, U.S.D.J.) granted the County and Philipps' motion for summary judgment. It first dismissed Chapotkat's claim against Philipps on the ground that the ADEA does not provide for individual liability, a ruling Chapotkat does not here appeal. It then held, as a matter of law, that Chapotkat could not demonstrate that the County's asserted non-discriminatory reason was pretext for age discrimination. The Clerk entered judgment on April 7, 2014 and Chapotkat timely noticed his appeal.

The sole issue raised on this appeal is whether the district court erred in granting summary judgment dismissing his ADEA claim against the County.

---

[1] Chapotkat's initial complaint alleged claims of race, national origin, religion and gender discrimination under Title VII, race discrimination under 42 U.S.C. § 1981 and age discrimination under the ADEA against the County, Philipps in her official and individual capacities and the Board of Commissioners of the Sewer District (JA-330, JA-347). His First Amended Complaint removed the Sewer District's Board of Commissioners as a defendant and added defendants County Executive C. Scott Vanderhoff, in his official and individual capacities and the County's Commissioner of Personnel, Patricia Prendergast, in her official and individual capacities and also added a claim under 42 U.S.C. § 1983 for violation of his Equal Protection rights (JA-350, JA-370-71). Chapotkat's Second Amended Complaint removed all defendants except for the County and Philipps (JA-11). By letter to the district court from Chapotkat's counsel dated September 23, 2013, Chapotkat withdrew all claims except for his ADEA claim (JA-87).

## STATEMENT OF FACTS

### A. <u>Background.</u>

Chapotkat was born in India in 1958 and is now a United States citizen (JA-91, JA-274 [Q.7A – "Are you a U.S. Citizen"; A. "Yes"]).  He began working at the Sewer District in 1987 as a PCA and served continuously in that position through 2010 (JA-92-93).  The Sewer District is an administrative arm of the County and a water treatment facility/laboratory where the County tests and analyzes wastewater (JA-373 at ¶ 4).

During the relevant time period, Chapotkat was one of four PCAs – the others were Hiten Vasa, Mahendra Patel and Linda Hoffman (JA-612).  Hoffman, hired in 1999 was the least senior of the four PCAs (JA-613).  The PCAs were supervised by the PCS, who was responsible for general oversight and management of the laboratory.  For the decade leading to the employment action at issue herein, the PCS was Dr. Leo Fung, who was hired into that position in 2000 (JA-374 at ¶¶ 16, 19).

George Gonos is the Chief Operator of Sewer District and has held that position since 1989 (JA-373 at ¶ 2).  In this position he oversees all operators at the Sewer District, including the PCS and PCAs (<u>Id.</u> at ¶ 3).  Diane Philipps is the Executive Director of the Sewer District and, as such, is its highest ranking employee (JA-427 at ¶¶ 3-4)

In 1991, Chapotkat took and passed the civil service test for the position of PCS and applied to Gonos for the position (JA-374 at ¶ 8). The County hired Dr. Raul Cardenas as PCS (JA-374 at ¶¶ 9-11). Cardenas retired in 1999, at which point Dr. Fung was hired to replace him (JA-374 at ¶¶ 12-16).

For the duration of his employment at the Sewer District, Chapotkat performed his job well (see, e.g., JA-394-408) and the record contains no evidence of any disciplinary action against him or otherwise suggests he was a poor employee.

## B. Fung announces his retirement and Chapotkat and Hoffman apply for the vacant PCS position.

In late March or early April 2010, Fung informed Gonos he was going to retire (JA-376 at ¶ 32). On April 7, 2010, he submitted to Gonos his formal resignation letter, designating April 24, 2010 as his last day (JA-251, JA-377 at ¶ 35). After learning of Fung's intention to retire, Gonos convened a meeting with the four PCAs about this (JA-603 at ¶ 8). At this meeting, Gonos did not solicit applications or make any statement as to the process the County would use to fill Fung's position (Id.). Chapotkat asked Gonos whether internal or external candidates would be considered and what the time-table would be for filling the position (Id.). Gonos did not provide any substantive response to Chapotkat's question (Id.). [2]

---

[2] We ignore defendants' contrary version of the same events on their motion for summary judgment.

Though he was then interested in the position, Chapotkat waited to see what the process would before formally applying, as it was not customary to simply apply for a position absent a posting and some time line for doing so (Id.).  He left in early April for vacation to India and did not return until April 21, 2010 (JA-122).  Upon his return, although no official announcement had been made to fill the vacant PCS position (JA-604 at ¶ 8), Chapotkat submitted his application on April 27, 2010 (JA-274-77).  Hoffman had submitted her application on April 7, 2010 (JA-415-18).

### C. Chapotkat, along with two other PCAs, suggest eliminating the PCS position and complain about discrimination.

By letter dated May 25, 2010, almost a full month after he applied for the vacant PCS position, Chapotkat, along with two other PCAs – Vasa and Patel – wrote Philipps, copying other County officials, and suggested that, as a cost-savings measure, the County eliminate the PCS position (JA-604 at ¶ 10, JA-612-14).  They did this in response to what they knew was the county's troubling financial crisis and because they honestly believed the move would help save the County money (Id.).

In their letter, the Indian PCAs also complained of what they perceived to be race, national origin and religious discrimination perpetrated against them by Dr. Fung (Id.).  A litany of correspondence between the PCAs and the County ensued during the following months. (JA-616-24).

### D. **Gonos and Phillips interview Chapotkat.**

In the fall of 2010, Gonos and Philipps interviewed Chapotkat and Hoffman – the only applicants – for the PCS position. The two inquired of both candidates their views on reducing the number of PCAs from four to three. Chapotkat responded that he would not object to such reduction (JA-535-36). Though Philipps testified at deposition that Chapotkat "had a negative attitude toward" the proposal, this is disputed and, in fact, she could not recall what his actual response was (JA-579-80). She claims that Hoffman responded positively to the proposal in that Hoffman asserted "it could be done" (JA-579).

At the interview, Gonos asked Chapotkat how old he was (JA-536). Appellant responded that he was fifty one (Id.). Gonos expounded, in sum and substance: "I don't like when people in their late fifties and sixties come and they don't stay here, and I don't like the process of selection. I prefer someone who could stay here for a long time" (JA-536-37). Chapotkat responded that, if hired as PCS, he intended to work at least fifteen more years, until full retirement age of sixty six (JA-537).

After this exchange, Philipps told Gonos that it was not proper for him to ask Chapotkat about his age (Id.). At deposition, neither Gonos nor Philipps could recall this exchange between Gonos and Chapotkat (JA-157, JA-201) though Gonos did

not deny he made the alleged comments (JA-157). [3] Phillips recalled Chapotkat indicating he planned to work an additional fifteen years (JA-202).

**E.** __The County promotes Hoffman over Chapotkat to the PCS position.__

Following the fall 2010 interviews, Hoffman continued to carry out the functions of PCS in a temporary capacity as she had been doing since Dr. Fung's departure (JA-607 at ¶ 18).  On January 12, 2011, having heard of no decision on the promotion, Chapotkat wrote Philipps to inquire about the PCS position (Id., JA-632).  Thereafter, Phillips and Gonos met with Chapotkat to advise him that Hoffman had been appointed to the provisional PCS position (JA-607 at ¶ 18). Hoffman was born in 1971 and, at the time of the November 2010 interviews was thirty-nine years old, thirteen years younger than Chapotkat.

## SUMMARY OF ARGUMENT

The district court below erred in holding that Chapotkat's direct evidence of age discrimination was insufficient as a matter of law to prove his ADEA claim. Specifically, the court erroneously concluded that Gonos's inquiry of Chapotkat's age during the interview and concomitant explanation that he disliked hiring older people in their fifties and sixties who might not stay for a long time because he disliked going through the selection and hiring process, as a matter of law, represent non-actionable legitimate inquiries into a candidate's retirement plans.

---

[3]  Again, defendants' refusal to acknowledge what was said is of no moment except in the pretext analysis which follows.

However, a reasonable jury could find that Gonos's comments reflected not a genuine interest in Chapotkat's actual intent to retire for purposes of proper succession planning at the Sewer District, but rather evinced his true principle of selection – *i.e.*, that Gonos prefers to hire/promote younger people because of his stereotypical view that older people do not stay "long enough" and, therefore, he might be required to again endure the selection/hiring process he disliked so much. In other words, Gonos made clear that he does not like to hire older people *because of their age* and what he believed followed from their ages and, on this basis, chose not hire Chapotkat because of his advanced age when compared to Hoffman's, who was thirteen years his junior and, thus, pursuant to Gonos's logic, would stay longer than the older Chapotkat, thus obviating his need to go through the selection/hiring process again.

The district court also erred in resolving factual questions regarding the County's proffered non-discriminatory reason for promoting the substantially younger Hoffman over Chapotkat. Indeed, the district court improperly ignored evidence (and logic) by which a reasonably charged jury could concluded that the allegedly non-discriminatory reason advanced by the County -- that it believed Hoffman was more interested in the PCS position -- is a false, ineffable and conclusory statement, here operating as a mere pretext for age discrimination.

In sum, Chapotkat's direct evidence (*i.e.*, Gonos's remarks) and indirect evidence (*i.e.*, the falsity of the County's asserted reasons, coupled with its promotion of a substantially younger candidate) of discrimination independently, and even more so when combined, demonstrate pretext and that Chapotkat would have been promoted but for his age. Accordingly, the district court erred in holding, as a matter of a law, that this evidence could not support a jury verdict in favor of Chapotkat and, consequently, its Order granting summary judgment should be reversed and vacated.

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo. See Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). Summary judgment is appropriate only where the moving party establishes that there is no genuine dispute as to any material fact, entitling to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if its resolution could affect the outcome of the suit and a dispute is genuine if reasonable minds may differ as to its resolution. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a reasonable jury could return a verdict for the non-moving party, then summary judgment is inappropriate and the court must deny the motion. See Id. at 250.

The court must view the record in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences

11

in [its] favor." See Holcomb, 521 F.3d at 137. The court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." See Anderson, 477 U.S. at 249. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." Id. at 255. And "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." See Danzer v. Norden Systems, Inc., 151 F.3d 50, 54 (2d Cir. 1998).

Moreover, the Court should review the record as a whole and, in doing so, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000). As such, "the court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id.

Finally, this Court has long cautioned against granting summary judgment in discrimination cases which typically turn on the issue of intent. See Holcomb, 521 F.3d at 137. Indeed, "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006)

(internal quotations omitted). Therefore, where, as here, intent is in issue, its resolution should be left to the jury. See Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984) ("This Court has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable."); Savino v. Town of Southeast, 983 F.Supp.2d 293, 300-015 (S.D.N.Y. 2013), aff'd. by, ---Fed.Appx.---, No. 13-4239-cv, 2014 WL 3036081 (2d Cir. Jul. 7, 2014) (Summary Order) (citing, *inter alia*, ITC Ltd. V. Punchgini, Inc., 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of inference and thus rarely amendable to summary judgment." (quotations omitted).

## ARGUMENT

The sole issue on this appeal is Chapotkat's claim that the County discriminated against him on the basis of age when it refused to promote him in 2010. Appellant submits that the district court erred in holding that his direct and indirect evidence of age discrimination were insufficient as a matter of law to defeat summary judgment. Since the district court erred in rejecting Chapotkat's direct evidence out of hand and a reasonable jury could find from that evidence, or his indirect evidence, or both combined, that he would have been promoted to the PCS position but for his age, the district court erred in granting summary judgment to the County and its Order and Judgment should be reversed and vacated.

The ADEA provides, in pertinent part:

> It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).  This prohibition protects employees age forty and older, id. § 631(a), and inarguably covers an employer's decision not to promote an employee. See, e.g., Raskin v. Wyatt Co., 125 F.3d 55 (2d Cir. 1997) (ADEA failure to promote case).  Thus, subject to a limited class of statutory exceptions not relevant here, see 29 U.S.C. § 623(f), (i)-(m), the ADEA prohibits an employer from refusing to promote an employee because that employee is forty or older.

In evaluating claims under the ADEA, this Court employs the familiar burden-shifting framework set forth in McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). Under this rubric, plaintiff first bears the *de miminis* burden of establishing a *prima facie* case of discrimination by demonstrating (1) he was within the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action and (4) the adverse action occurred under circumstances giving rise to inference of discrimination. See Id. at 107.

A *prima facie* case establishes a presumption of discrimination, which the defendant may rebut by articulating a legitimate, non-discriminatory reason for its

challenged action. See Id. at 106. If the defendant carries this burden, the presumption of discrimination disappears and the plaintiff must then demonstrate that the defendant's proffered legitimate reason was merely a pretext for its true discriminatory motive. Id.

On summary judgment, the plaintiff's ultimate burden in an ADEA case is to demonstrate that a reasonable jury could find, by a preponderance of evidence, that, but for his age, he would not have suffered the challenged adverse employment action. See Id. (citing Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180 (2009)).

The district court below correctly found that the record in this case establishes Chapotkat's *prima facie* case – he is over the age of forty, was denied a promotion to a position for which he was qualified in a manner raising an inference of discrimination because, instead of Chapotkat, the County, aware of the age difference, promoted a substantially younger candidate – Hoffman (SA-11-12).

The district court also concluded that the County satisfied its burden of production in articulating a legitimate non-discriminatory reason for its decision to promote Hoffman over Chapotkat – namely, that Hoffman appeared to be more interested in the PCS position than Chapotkat, as demonstrated by a number of factors addressed in detail below.

At the third stage of the <u>McDonnell Douglas</u> analysis, a plaintiff "may satisfy the ultimate burden of proving pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" <u>Papalia v. Milrose Consultants, Inc.</u>, No. 09-Civ.9257 (NRB), 2011 WL 6937601, at *10 (S.D.N.Y. Dec. 29, 2011) (quoting <u>Dister v. Cont'l. Group, Inc.</u>, 859 F.2d 1108, 1113 (2d Cir. 1988)).

Here, the district court erroneously concluded that Chapotkat's direct and indirect evidence of age discrimination was insufficient to carry his ultimate burden as a matter of law.

## POINT I

**THE DISTRICT COURT ERRONEOUSLY REJECTED CHAPOTKAT'S DIRECT EVIDENCE OF AGE DISCRIMINATION BECAUSE THAT EVIDENCE EVINCES THE DECISION MAKER'S AGE-BASED STEREOTYPE AND PRINCIPLE OF SELECTION, NOT AN AGE-CORRELATED CONCERN, AND A REASONABLE JURY COULD FIND FROM THIS EVIDENCE THAT CHAPOTKAT HAVE BEEN PROMOTED BUT FOR HIS AGE.**

Gonos's remarks to Chapotkat during the interview process – namely, his inquiry about Chapotkat's age and asserted preference for hiring/promoting younger, as opposed to older, employees – constitute direct evidence of age discrimination sufficient to overcome summary judgment. Indeed, remarks that "tend[] to show

16

that the decision-maker was motivated by assumptions or attitudes relating to the protected class" are probative of discriminatory intent. See Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007).

Here, during the interview process, Gonos asked Chapotkat how old he was and, in the context of that inquiry, explained: "I don't like when people in their late fifties and sixties come and they don't stay here, and I don't like the process of selection. I prefer someone who could stay here for a long time" (JA-536-37). A reasonable jury could find that this statement evinces Gonos's principle of selection –i.e., he does not like to hire/promote older people *because of their age*. Thus, a jury could find that, more likely than not, Gonos chose not to promote Chapotkat because of his age.

In rejecting this evidence, the district court framed Gonos's remarks as a legitimate inquiry into Chapotkat's retirement plans, which, though "age-related" is a legitimate factor for an employer to consider and, as a matter of law, cannot constitute age discrimination under the ADEA or demonstrate age bias (SA-13-14). Respectfully, the district court erred.

First, a reasonable jury could find that Gonos's comments were not about retirement at all, but rather, directly evince his stereotypical belief about older employees – that they tend not to stick around -- and the profound effect of that belief on his decision making. In short, a reasonable jury could conclude that Gonos

17

preferred not to hire/promote older people because, if he did, he might, sooner rather than later, have to engage in the hiring/selection, which he disliked. Thus, a reasonable jury could find that Gonos's comments demonstrate that he refused to promote Chapotkat because of his age and, instead, chose the substantially younger Hoffman for that same reason.

And, to the extent the comments could arguably be interpreted as relating to retirement, that fact would not doom Chapotkat's claim. Indeed, while an employer may legitimately consider an employee's intended retirement plans in making an employment decision, it may not use retirement as a proxy for age discrimination. Cf. Hazen Paper Co. v. Biggins, 507 U.S. 604, 612-13 (1993); Israel v. Geithner, No. 12-CV-346, 2013 WL 4016929, at *3 n.5 (E.D.N.Y. Aug. 6, 2013).

In Hazen the Supreme Court held that an employer's interference with vesting pension benefits did not violate ADEA. See Hazen, 507 U.S. at 612. But, in doing so, it explained:

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent . . . but in the sense that the employer may suppose a correlation between the two factors and act accordingly.

Id. at 612-13. Here, to the extent Gonos's comments are construed as relating to retirement, a reasonable jury could find that Gonos supposed a correlation between

retirement and age (i.e., that older employees are more likely to retire), and decided against promoting Chapotkat not out of a legitimate succession planning interest based on an actual belief that Chapotkat intended imminently to retire, but rather solely because he knew Chapotkat was older.

The District Court for the Eastern District of New York's decision in Israel, a case involving facts similar to the instant matter, is instructive. There, the plaintiff, a fifty-five year old IRS employee, was denied a promotion, which was given to colleague three years younger than he. See Israel, 2013 WL 4016929 at *1. The decision maker told the plaintiff's union representative "that she would not promote [plaintiff] because 'he was ready to retire,' and she wanted a candidate who would fill the position 'on a constant basis for years to come.'" Id. Further, the decision maker "had no reason to believe that [plaintiff] actually planned to retire" and did not "ever reach out to [plaintiff] to confirm her assumption [which was not] based on anything other than [plaintiff's] eligibility to retire." Id.

In holding that this evidence was sufficient to plead circumstances giving rise to an inference of discrimination, the court in Israel aptly explained:

> If [the decision maker] merely intended to distinguish between those applicants who were and were not immediately eligible to retire, her comment would not support an inference of discrimination. The ADEA does not prohibit adverse employment decisions based on any reasonable factor other than age, even if such a factor is correlated with age: for example, retirement eligibility or pension status.

> A lawful inference, however, is not the only reasonable inference that may be drawn from what is alleged by [plaintiff] in the pleadings before the Court. For instance, [the decision maker], it might be inferred, intended to convey [to the union president] that she would not promote [plaintiff] because she assumed on the basis of his age that [he] intended to retire imminently. In that case, [the decision maker's] decision would have been driven by her *assumption* about [plaintiff's] desire not to continue working, rather than her knowledge of an act or statement by [plaintiff] that he was about to retire. While the Second Circuit has held that the latter is germane to the joint interests of the employee and the company in filling a key position, the former has not place in an employment decision.

Id. at *3 (citations and quotations omitted) (emphasis in original).

Similarly instructive is the District Court for the District of Connecticut's decision in Castelluccio v. Int'l. Bus. Machines Corp., No. 09-CV-1145, 2014 WL 3696365 (D.Conn. Jul. 23, 2014). There, the district court denied IBM's Rule 50(b) post-trial motion for judgment as a matter of law, which, *inter alia*, sought to set aside a jury's verdict in favor of the plaintiff on his ADEA claim. In doing so, the court concluded that the plaintiff's sufficient direct evidence in the form of age-related comments from which the jury properly could have drawn an inference of age discrimination under the applicable "but for" standard. See 2014 WL 3696365 at *3-*5.

The court described the relevant remarks as follows: "Castelluccio testified that [his direct supervisor] asked, 'You're old enough to retire right?' Castelluccio

also testified that [she] stated 'How old are –' as if to ask how old he was, before stopping herself midsentence." Id. at *4.  The court explained it was a proper function for the jury to have evaluated these remarks to determine whether they were "stray" or evidenced age discrimination and to assign the appropriate probative weight thereto. See Id. at *4-*5.

Likewise, in this case, a reasonable inference that may be drawn from the record evidence is that Gonos's comment reflects his assumption about Chapotkat's ability and desire to retire and is not based any actual evidence that Chapotkat's retirement was imminent.  Indeed, in response to Gonos' comments, Chapotkat stated that he intended to work another fifteen years if promoted to PCS (JA-536-37).  But, Gonos had just seen Fung, who was older than Chapotkat at the time he was hired in 2000, retire after only ten years, thus reinforcing his stereotypical view that older employees don't stick around, causing him to undertake the selection/hiring process he so disliked.  On summary judgment, the district court was bound to draw this reasonable inference and, by failing to do so, committed reversible error.

Moreover, the cases the district court relies upon to support its position are readily distinguishable.  First, the district court cited Crowe v. Leroy Cent. Sch. Dist., 949 F.Supp.2d 435 (W.D.N.Y.2013) for the proposition that "a company has a legitimate interest in learning its employees' plans for the future, and it would be

21

absurd to deter such inquiries by treating them as evidence of unlawful conduct" (SA-13-14 (quoting <u>Crowe</u>, 949 F.Supp.2d at 446)).

In that case, after a teacher in the plaintiff's school district resigned pursuant to a voluntary early retirement program, plaintiff, a twelfth-grade English teacher, was reassigned to teach ninth-grade English. <u>See</u> <u>Id.</u> at 439-40. In protesting that decision, plaintiff was told by his superior: "We know you are not going to be here for forever, and I would rather make a change now while you are still here and can help your replacement than to wait until you are gone." <u>Id.</u> at 440. The district court concluded that, "[a]t most, [these] statements suggest that the reassignment was attributable, in part, to succession planning. However, there is nothing in age discrimination jurisprudence that would prevent a company from succession planning." <u>Id.</u> at 446.

By contrast, Gonos's comments in this case had nothing to do with succession planning. Rather, his comments reflected his preference for younger employees as a means to satisfy his own proclivities, i.e. to avoid, personally, going through the selection and hiring process he so disliked. He made no comments or inquiries about Chapotkat's actual intent to retire and, indeed, Chapotkat volunteered the fact that he intended to work another fifteen years. A reasonable jury could find that, unlike the comments at issue in <u>Crowe</u>, which do not even reference the concept of age,

Gonos's comments, which refer to "older people" and which inquired Chapotkat's age, reflect his age-based stereotypical beliefs.

The district court also cites Boston v. Blue Cross and Blue Shield of Kansas, Inc., 431 Fed.Appx. 763 (10th Cir. 2011), an unreported, non-controlling decision from the Tenth Circuit (SA-14). In that case, the president of the company at which plaintiff worked retired in October 2007 and the plaintiff's direct supervisor was selected to fill that position. See Id. at 764. Shortly thereafter, the plaintiff expressed interest in an open vice president position, but the new president selected someone else instead. See Id. In January 2007, ten months before his then-supervisor ascended to the presidency, the plaintiff advised him that he intended to retire the following April 2008 when he turned age 60 and, in fact, he retired in April 2008 as stated. See Id. at 764-65. He then brought a claim for age discrimination under the ADEA for his company's failure to promote him the vice president position. See Id. at 765.

That case, which as mentioned is non-controlling and of little, if any precedential value herein, is strikingly different from the case here. It did not involve any comments about the plaintiff's age and the notion of succession planning was clearly related to the plaintiff's stated intent to retire within months after being denied the promotion he sought.

23

Next, the district court cited <u>Jetter v. Knothe Corp.</u>, 200 F.Supp.2d 254 (S.D.N.Y. 2002) for the proposition that "inquiries about retirement plans do not necessarily show animosity towards age" (SA-14 (quoting <u>Jetter</u>, 200 F.Supp.2d at 264 n. 9)). In that case, the plaintiff did not provide any direct evidence or age-related comments, and the district court's remark about retirement plans was dicta. In any event, as already explained, Gonos's comments did not reflect a legitimate concern about Chapotkat's retirement plans for purposes of advancing the Sewer District's legitimate operational interests.

Finally, the district court's citations to <u>Lee v. Rheem Mfg. Co.</u>, 432 F.3d 849, 853 (8th Cir. 2005) and <u>Boston v. McFadden Publ'g, Inc.</u>, No. 09-Civ-457, 2010 WL 3785541, at *11 (S.D.N.Y. 2010) are equally unavailing (SA-14). Indeed, <u>Lee</u> is a non-controlling decision from the Eight Circuit in which the challenged comments did not reference age, but rather the company's legitimate needs to "plan for the future." See 432 F.3d at 853. To the contrary, here Gonos explicitly referenced age in stereotypical fashion and explained how that factor affected him and motivated his decision making process. And, in <u>McFadden</u>, the context in which the comments were made clearly did not support an inference of discrimination and it was the plaintiff himself who repeatedly raised the topic of retirement. See 2010 WL 3785541 at *11. Here, as already explained, the context supports an inference of discrimination and it was Gonos who raised the issue of age at the interview.

Based on all the foregoing, a reasonable jury could find that, Gonos's comments do not reflect a genuine concern about Chapotkat's actual intent to retire or the legitimate succession planning needs of the Sewer District, but rather evince his stereotypical assumptions about older employees, such as Chapotkat and that these misguided assumptions motivated his actions. In sum, a reasonable jury could find Gonos's comments to be direct evidence of age discrimination.

### POINT II

**THE DISTRICT COURT ERRONEOUSLY IGNORED CHAPOTKAT'S CIRCUMSTANTIAL EVIDENCE OF AGE DISCRIMINATION AND, INSTEAD, IMPROPERLY RESOLVED FACTUAL AND CREDIBILITY DETERMINATIONS IN FAVOR OF THE COUNTY IN ACCEPTING ITS PROFFERED NONDISCRIMINATORY REASONS DESPITE THE FACT THAT THE RECORD CONTAINS SUFFICIENT EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND SUCH REASONS FALSE AND PRETEXTUAL.**

In addition to the direct evidence of discrimination discussed in Point I above, Chapotkat also presented sufficient indirect evidence of discrimination sufficient to demonstrate his age was the but for cause of the County's failure to promote him – namely, proof that the County's proffered explanation for promoting the substantially younger Hoffman instead of him is unworthy of credence. The district court erroneously ignored this evidence when it accepted the County's proffered

reason and improperly resolved fact and credibility questions in favor of the County in doing so.

Presumably because the objective evidence demonstrates that Hoffman was *not* objectively better qualified than Chapotkat (indeed, the record suggests the opposite), the County has asserted as its single non-discriminatory reason for promoting Hoffman over Chapotkat its subjective belief that Hoffman was more interested in the PCS position (SA-12).

As this Court has recognized, an employer may lawfully base "a hiring decision on subjective criteria, such as the impression an individual makes during an interview." See Byrnie v. Town of Cromwell Pub. Schools, 243 F.3d 93, 104 (2d Cir. 2001). But it is equally true that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion" lest employers be able to avoid claims of discrimination simply by responding with "some subjective preference or prerogative." Id. at 104-05. "Accordingly, an employer's explanation must be clear and specific in order to afford the employee a full and fair opportunity to demonstrate pretext." Id. at 105.

Moreover, "[a] subjective evaluation, besides being clear and specific, must also be honest. That is to say that while the business judgment rule protects the sincere employer against second-guessing of the reasonableness of its judgments, it

does not protect the employer against attacks on its credibility." Id. (quotations and citations omitted).

The district court below identified evidence in the record it concluded supported the County's assertion that it honestly believed Hoffman was more interested in the PCS position and,. Specifically it found:

1. "Hoffman submitted her application almost immediately after the position was announced while Plaintiff waited several months to submit his application" (SA-12).

2. "Plaintiff advocated for the elimination of the exact position for which he applied" and "[w]hile Plaintiff's motivation behind that position was ostensibly to save the County money, it is certainly reasonable that Gonos inferred from this that Plaintiff was less motivated to occupy that position than Hoffman" (Id.).

3. "Philipps' perception was that Hoffman was more open to working with a reduced number of PCAs than Plaintiff" (Id.).

But, in contravention of this proper standard of review on summary judgment, the district court accepted this evidence over Chapotkat's evidence directly refuting the same, thereby impermissibly resolving factual and credibility determinations in favor of the County (SA-12-13, SA-15). See Reeves, 530 U.S. at 150-51 (The court "must disregard all evidence favorable to the moving party that the jury is not required to believe" and "should give credence to the evidence favoring the nonmovant . . . ."). Thus, the district court concluded:

> Given the circumstances, including that Plaintiff applied for the position later than Hoffman, Hoffman was perceived as being more interested in the position, and that Plaintiff suggested eliminating the PCS position, it cannot be said that age was the "but-for" reason Hoffman was promoted over Plaintiff.

(SA-15). By failing to view the record in the light most favorable to Chapotkat and accepting the County's position as gospel, the district court committed reversible error.

A proper review of the record – which accepts Chapotkat's evidence as true, draws all reasonable inferences in his favor and disregards the County's evidence which is disputed, impeached or comes from interested witness, see Reeves, 530 U.S. at 151 – demonstrates that a reasonable jury could find that each of the factors the district court found supported the County's articulated non-discriminatory reason are unworthy of credence and, thus, the rationale itself is false and pretextual.

For instance, a reasonable jury could disbelieve the contention that "Hoffman submitted her application immediately" while "Plaintiff waited several months" supports the County's genuine belief that Hoffman was more interested in the position. First, contrary to the district court's representation that Chapotkat "waited several months" after the position was announced to submit his application (SA-12), the record reveals that (1) the position never was formally "announced" before he submitted his application (see JA-603-04 at ¶ 8) and (2) Chapotkat submitted his application less than three weeks after Hoffman (Compare JA-274-77 [Chapotkat's

application, dated April 27, 2010] <u>with</u> JA-415-18 [Hoffman's application, dated April 7, 2010]).  Thus, there was no lapse of "several months."

Moreover, viewing the evidence in the light most favorably to Chapotkat, a reasonable jury could find that Chapotkat's delay in applying [relative to Hoffman] was attributable not to a lack of interest in the position, but rather because (1) as Chapotkat avers in his Affidavit, Gonos had not yet solicited applications for the position and "it was not customary to simply apply for a position absent a posting and some time line for doing so" (JA-603 at ¶ 8) and (2) he was on vacation in India from the beginning of April until April 21, 2010 (JA-122), a fact a jury could reasonably infer his employer knew.

A reasonable jury could also disbelieve the contention that "[P]laintiff advocated for the elimination of the exact for position for which he applied" (SA-12) supports a genuine belief Chapotkat was not interested in that position.  Indeed, a reasonable jury could accept Chapotkat's contrary contention that he suggested eliminating the PCS position in light of the County's admitted financial hardships (JA-604 at ¶ 10; JA-612-13) and not because he was disinterested in being promoted to that position.  Indeed, he did not formally advocate this position until almost a full month after he applied for it. (<u>Compare</u> JA-274-77 [Chapotkat's application, dated April 27, 2010] <u>with</u> JA-612-613 [letter to Philipps, date May 25, 2010]).

29

In addressing this issue, the district court concluded: "While Plaintiff's motivation behind that position was ostensibly to save the County money, it is certainly reasonable that Gonos inferred from this that Plaintiff was less motivated to occupy that position than Hoffman" (SA-12). Maybe so. But a reasonable jury could also accept Chapotkat's position and reject Gonos's contrary claim, especially since Gonos knew that Chapotkat had previously applied for and sought promotion to that same position. And, in any event, as a matter of pure logic, Chapotkat's suggestion that the PCS position be eliminated is not inconsistent with his strong interest in and desire to hold that position should it not be eliminated and his effort to think first of the County, not of himself, should not be held against him to support the County's motion for summary judgment.

Addressing Chapotkat's prior application for the PCS position nineteen years earlier in 1991, the district court concluded: "a lot can change in nineteen years. It is not unreasonable for Gonos to believe that Plaintiff no longer had the same ambitions he did nineteen years before" (SA-12). This may be true. But a reasonable jury could also find from Chapotkat's testimony and the fact that he had to jump through hoops to provide the County with sufficient evidence his educational background from his University in India, as well as the other objective evidence in the record, that his ambitions remained high and that Gonos knew this.

Finally, a reasonable jury could reject the County's position, accepted by the district court below, that Philipps perceived "that Hoffman was more open to working with a reduced number of PCAs than Plaintiff" (SA-12). To be sure, Philipps testified at deposition that, when asked about this prospect, Hoffman exhibited a "positive attitude" and Chapotkat a "negative attitude" (JA-579-80). But a review of the actual responses Philipps adjudged "positive" and "negative" demonstrates there was nothing objectively, or subjectively for that matter, "negative" about Chapotkat's response, especially when compared to Hoffman's,

Indeed, Philipps testified that when she posed the question to Hoffman, the latter responded, simply, "That it could be done" (JA-579). And though she conveniently could not recall what Chapotkat said in response (see JA-580), his undisputed testimony is that he did not object to the proposition (JA-536). There is nothing objectively "negative" about Chapotkat's response and, indeed, on its face, his "not objecting" is substantively the same as Hoffman's "it could be done." Moreover, Chapotkat credibly avers, consistent with his deposition testimony, that "[t]he claim that I stated I would object to working with 3 PCAs is false; I never made that statement and was on the record as supporting and proposing a shrinkage in the unit's count many months before my interview" (JA-609 at ¶ 27). Thus, a reasonable jury could find that Philipps's testimony incredible and reject her asserted "perception."

The district court improperly resolved the foregoing disputed factual questions in favor of the County. Again, in reviewing the instant motion, the district court was bound to disregard evidence favorable to the County that is disputed or comes from interested witnesses, like Gonos and Philipps, and drawn all favorable inferences in favor of Chapotkat. See Reeves, 530 U.S. at 150-51. Under the appropriate standard, the record plainly demonstrates the existence of genuine factual disputes calling into question the credibility of the County's sole and entirely subjective asserted rationale for choosing Hoffman over Chapotkat.

As the Supreme Court has aptly explained:

> The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reason will permit the trier of fact to infer the ultimate fact of intentional discrimination.

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it *may be quite persuasive* . . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.

> *       *       *       *       *

> Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in

32

the best position to put forth the actual reason for its decision.

Reeves, 530 U.S. at 147-48 (emphasis added). Thus, a finding that the County's asserted non-discriminatory reason is false, especially when that reasons is entirely subjective, is strong evidence of intentional discrimination. See Id.; Byrnie, 243 F.3d at 105 (explaining that "[a] subjective evaluation, besides being clear and specific, must also be hones" and is not immune from attacks on its credibility).

Even where, as here, the standard is "but for" causation, a reasonable jury could infer the ultimate conclusion of age discrimination from the falsity of the County's asserted reason. Indeed, this is particularly so when that reason falls away and all that is left are the candidates' objective qualifications and a thirteen year age discrepancy. A reasonable jury could find that, but for his age, Chapotkat, who was arguably significantly more qualified than Hoffman would have been promoted. And this inference becomes even stronger when viewed in combination with the Gonos's age-related remarks discussed in Point I above. See Papalia, 2011 WL 6937601 at *11 ("Here, the combination of indirect and direct evidence persuades us that Papalia has carried her burden at this stage . . . .").

Finally, the district court erroneously held that the fact that Gonos was close to Chapotkat's age "weakens any inference of age discrimination" (SA-16). Indeed, the Second Circuit has held that it is "patently untenable" to propose that "people in a protected category cannot discriminate against their fellow class members." See

Danzer, 151 F.3d at 55; See also Savino, 983 at 304 (rejecting defendant's argument that his wife of 43 years is of Italian Heritage weakens any inference that he discriminated against plaintiff on the basis of plaintiff's Italian national origin).

This is especially so here given the nature of the direct evidence at issue – *i.e.*, Gonos's remarks. Indeed, his comments were not offensive to or derogatory of the protected class such that one might argue that a member of that class could not harbor such beliefs; rather, his comments reflect his stereotyped beliefs about the protected class and the impact of such stereotype upon his preferences as a hiring manager. In any event, to the extent this factor has any bearing on the question at issue here, it is a matter for a jury to determine in discharging its function as fact finder to weigh the evidence and draw inferences therefrom – on this summary judgment motion, the court may not usurp that function and must draw all reasonable inferences in favor of Chapotkat.

## CONCLUSION

The district court below failed to view the record in the light most favorable to Chapotkat. It resolved a number of questions of fact and made multiple credibility determinations in favor of the County when it interpreted Gonos's remarks to Chapotkat during the interview as demonstrating a legitimate concern for Chapotkat's retirement plans as opposed to evincing his stereotypical views of older employees and when it ignored abundant and credible objective evidence refuting

the County's sole and entirely subjective asserted non-discriminatory thereby accepting the same as gospel.

But a proper review of the record demonstrates that a reasonable jury could find from Chapotkat's direct and indirect discrimination – including Gonos's remarks, the falsity of the County's asserted rationale and the thirteen year age difference between Chapotkat and the County's preferred candidate, Hoffman – that he would have been promoted the PCS position but for his age.

Dated:     Goshen, New York
           August 12, 2014                    Respectfully submitted,

                                              SUSSMAN AND WATKINS
                                              *Attorneys for Plaintiff-Appellant*

                                              By: _____
                                              Michael H. Sussman, Esq.
                                              SUSSMAN AND WATKINS
                                              P.O. Box 1005
                                              1 Railroad Avenue, Ste. 3
                                              Goshen, New York 10924
                                              (845) 294-3991
                                              (845) 294-1623
                                              sussman1@frontiernet.net

TO:   Robert B. Weissman
      SARETSKY KATZ DRANOFF & GLASS, LLP
      *Attorneys for Defendants-Appellees*
      475 Park Avenue South
      New York, New York 10016
      (212) 973-9797
      (212) 973-0939
      rweissman@skdglaw.com

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,140 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

Dated:      Goshen, New York
            August 12, 2014

_____
MICHAEL H. SUSSMAN

# SPECIAL APPENDIX

## SPECIAL APPENDIX – TABLE OF CONTENTS

Opinion and Order (April 4, 2014)...………………………………………SA-1-17

Judgment (April 7, 2013)…………………………………………………...SA-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
AJAYVEER CHAPOTKAT,                                    :
:
Plaintiff,        :
v.                                                    :
:                    11-cv-06209 (NSR)
COUNTY OF ROCKLAND; DIANNE T.                         :
PHILIPPS in her official capacity as Executive        :          OPINION AND ORDER
Director of the Rockland County Sewer District        :
No. 1 and in her individual capacity,                 :
:
Defendants.       :
:
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge.

Ajayveer Chapotkat ("Plaintiff") brings this action against the County of Rockland and

Dianne T. Philipps ("Defendants") for age discrimination in violation of the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Before the Court is Defendants' motion

for summary judgment. For the following reasons, Defendants' motion is GRANTED.

## I.     Factual Background[1]

Plaintiff is a Hindu Indian man who was born in 1958. Second Amended Complaint

("Sec. Amend. Compl.") ¶ 1. Plaintiff began working at the Rockland County Sewer District No.

1 ("RCSD") on July 20, 1987, when he was hired as a Pollution Control Assistant ("PCA"). *Id.*

at ¶ 9. The RCSD is a treatment plant and contains a laboratory where wastewater is tested and

analyzed. Rule 56.1 Statement ("56.1") ¶ 9. PCAs work in the laboratory and are managed by a

---

[1] The facts are undisputed, unless otherwise noted.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  4|4.204

1

Pollution Control Supervisor ("PCS"). *Id.* at ¶ 10. The PCS is tasked with managing the laboratory, ensuring that testing is done correctly, maintaining the laboratory's New York State Department of Health's Environmental Laboratory Approval Program ("ELAP") certification, and reporting test results to the Chief Operator. *Id.* at ¶ 11. The current Chief Operator, George Gonos ("Gonos"), supervises the operations at RCSD. *Id.* at ¶ 9, 18. Gonos has served in that capacity at RCSD since 1989. *Id.* at ¶ 18. Defendant Dianne T. Philipps ("Philipps") is the current Executive Director and the highest-ranking employee at RCSD. *Id.* at ¶ 6-7. She assumed the role of Executive Director in March 2004. *Id.* at ¶ 17.

In February 2010, the then-PCS, Leo Fung, informed Philipps that he would be retiring in April 2010. *Id.* at ¶ 72. Mr. Fung was hired as a PCS by Gonos and began working at RCSD on January 3, 2000. *Id.* at ¶ 37. Throughout Mr. Fung's tenure as PCS, there were four PCAs: Plaintiff, Linda Hoffman ("Hoffman"), Mr. Vasa and Mr. Patel. *Id.* at ¶ 44. Beginning in early 2008, the County of Rockland was struggling financially and the County Executive sent a memo encouraging County commissioners and Department heads to "strive to seek methods to control payroll expenses." Philipps Dec. Ex. A. Upon learning that Mr. Fung was to retire, Philipps proposed that the open PCS position be filled internally in order to reduce the number of PCAs from four to three and reduce costs.[2] 56.1 at ¶ 75. Gonos held a meeting with the PCAs in March or early April 2010 during which he announced that Mr. Fung was planning to retire and that if anyone was interested in the position, they could apply. *Id.* at 90; Sec. Amend. Compl. ¶21.

---

[2] Philipps sent a letter to Laurie Rindskopf, an employee at the Rockland County of Personnel stating "There is an opportunity to promote from within . . . . The benefit of a promotion is that we could not fill the vacated position and possibly eliminate it at some later date. I would like to wait until the person promoted passes the civil service exam before eliminating the encumbered position." Philipps Dec. Ex. B.

Hoffman applied for the open PCS position soon after that meeting and the Rockland

County Department of Personnel ("Personnel Department") received her application on April 7,

2010. 56.1 ¶ 93-94; 97. Mr. Fung submitted his official resignation letter on April 7, 2010

announcing that he would retire on April 24, 2010. *Id*. at ¶ 98. As of April 23, 2010, Hoffman

was the only person who had applied for the vacant PCS position. *Id*. at ¶ 99. Due to the fact that

she was the only one who applied for the position at the time Mr. Fung retired, and because it

was necessary for the laboratory to have a supervisor, Hoffman was appointed as the temporary

laboratory director. *Id*. at ¶ 108. She officially remained a PCA but assumed additional duties,

including with respect to ELAP certification. *Id*. at ¶ 109. On April 29, 2010, Plaintiff applied to

the Personnel Department for the vacated PCS job. *Id*. at ¶113.

On May 25, 2010, Plaintiff, Mr. Vasa, and Mr. Patel sent a letter to Philipps stating that

the three signees advocated eliminating the PCS position altogether and instead, have each of the

PCAs assume additional duties. Weissman Dec. Ex. N. Plaintiff, Mr. Vasa, and Mr. Patel had

previously approached Gonos to express the same proposition, a fact which was also noted in the

letter. *Id*. The letter also complained that Mr. Fung had been training Hoffman "secretly for

several months," apparently upon the PCAs belief that Mr. Fung discriminated against them due

to differing political and religious beliefs. *Id*. The letter stated specifically that "[o]ur intent is to

highlight the fact that the 3 minority Laboratory Analysts are not being given an equal

opportunity and have potentially been discriminated [against]." *Id.* Philipps responded to this

letter on June 3, 2010, stating that the PCS position was required and could not be eliminated.

Weissman Dec. Ex. P. She additionally stated that although the PCAs conflicts with Mr. Fung

were never brought to her attention, she was referring the letter to the Office of Employee

Rights, Relations and Training. *Id*. The three PCAs replied to this letter on July 26, 2010,

3

referring to such as a "formal complaint of discrimination." Weissman Dec. Ex. R. The July 26

letter further affirms that Mr. Fung's religious beliefs overwhelmed the workplace. *Id.*

The Personnel Department is the entity that reviews job applications and makes a

determination of whether an applicant is qualified under the civil service requirements for a

certain position. 56.1 ¶ 139. On June 14, 2010, Hoffman's application was approved by the

Personnel Department. *Id.* at ¶ 140. On June 17, 2010, Plaintiff was asked to supplement his

application with proof that he did complete four credits in microbiology and that his foreign

university degree was the equivalent of a bachelor's degree. Weissman Dec. Ex T. Following

submission of supporting documentation, the Personnel Department approved Plaintiff's

application on September 7, 2010. 56.1 ¶ 143.

In the fall of 2010,[3] Philipps and Gonos interviewed Plaintiff and Hoffman, the two

candidates who had applied for the PCS position. *Id.* ¶ 144. Each candidate was asked how they

would react to having one less PCA operating in the laboratory. *Id.* at ¶ 148. Hoffman stated that

this could be done. *Id.* at ¶ 149. Plaintiff states that he did not object to the reduction in staff.

Sussman Ex. 4 201:22-202:11. Philipps recalled that Plaintiff "had a negative attitude" about the

suggestion but did not remember Plaintiff's exact response to the question. Weissman Dec. Ex. E

123:12-124:9. At Plaintiff's interview, Plaintiff claims that Gonos asked Plaintiff his age.

Chapotkat Dep. 202:16-203:6. Gonos allegedly stated that he did not like the selection process,

and so he preferred candidates who would stay in the position for a long time. *Id.* Plaintiff said

that he planned to work for another fifteen years. *Id.* at ¶ 153. Neither Gonos nor Philipps

---

[3] There is some discrepancy regarding the exact timing of the interviews. Defendants state in their 56.1 Statement that the interviews occurred in November 2010, 56.1 ¶ 144, while Philipps stated in her deposition that they occurred September or October, *see* Sussman Affirm. Ex. 5 124:10-124:11. The difference is irrelevant for the purposes of this motion.

remember Gonos making an inquiry into Plaintiff's retirement plans, although Philipps does recall Plaintiff volunteering the fact that he planned to work fifteen more years. *Id.* at ¶ 154.

Hoffman was appointed as the provisional PCS in early 2011.[4] *Id.* at ¶ 164. The appointment was provisional pending the PCS civil service examination. *Id.* at ¶ 165. Plaintiff was informed that Hoffman had been selected after he wrote a letter to Philipps inquiring of the status of the position, after which Plaintiff met with Philipps and Gonos and they informed him of their choice. Pl.'s Reply to Def.'s Rule 56.1 Statement ¶ 164.

Plaintiff filed a complaint with the EEOC and received a "Notice of Right to Sue" dated August 10, 2011. Compl. Ex. A. Plaintiff commenced this lawsuit on September 6, 2011. Dock. No. 1. In Plaintiff's Second Amended Complaint, he alleged discrimination on the basis of race, national origin, age, religion, and gender.

The Personnel Department announced on November 30, 2011 that a civil service examination for the PCS position would be administered on February 4, 2012. 56.1 ¶ 167. Plaintiff submitted an application for the permanent position on December 20, 2011. *Id.* at ¶ 168. The Personnel Department informed Plaintiff on January 6, 2012 that his application was rejected due to the fact that it failed to show that Plaintiff had completed 155 undergraduate credits. *Id.* at ¶ 170. Plaintiff was conditionally approved to take the civil service exam on January 19, 2012 on the condition that he submit proof that he completed 155 credits. *Id.* at ¶ 172. Plaintiff faxed a letter to Joan Silvestri, the Personnel Department Commissioner stating that the January 19 letter contradicted the approval of his application for the provisional PCS

---

[4] Plaintiff contests that Hoffman was "appointed" to the position in early 2011. Plaintiff states that, rather, Hoffman continued serving in the role she had occupied since Mr. Fung retired in April 2010. For reasons stated below in Section II(c), this argument is untenable because Plaintiff did not file an EEOC complaint within 300 days of the April 2010 "promotion."

position in September 2010. *Id.* at ¶ 173. Ms. Silvestri responded the same day, stating that she

had personally reviewed his application and confirmed that there were deficiencies. *Id.* at ¶ 174.

Following that exchange, Plaintiff did not attempt to clarify his education credentials with the

Personnel Department. *Id.* at ¶ 177.

Both Plaintiff and Hoffman took the civil service exam on February 4, 2012. *Id.* at ¶ 178.

Hoffman received a score of 90; Plaintiff scored a 75. *Id.* at ¶ 179-80. On April 20, 2012, Ms.

Silvestri informed Plaintiff of his score and informed him that he would not be placed on the

eligible list (a list of candidates who meet the civil service qualifications and pass the civil

service exam) until he corroborated his education credentials. Plaintiff did not submit any further

materials. *Id.* at ¶ 181. On May 2, 2012, Hoffman was appointed to the permanent PCS position.

*Id.* at ¶ 188.

In a letter to the Court sent by Plaintiff on September 23, 2013, Plaintiff voluntarily

withdrew all claims other than his age discrimination claims. Accordingly, the Court addresses

only Plaintiff's claim that he was denied the PCS position because of age discrimination in

violation of the ADEA.

## II. Legal Standards
### a. Summary Judgment Standard

A court must grant summary judgment where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). On a motion for summary judgment, the moving party bears the initial burden

of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or

declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving

party may support an assertion that there is no genuine dispute by "showing . . . that [the]

adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving

party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v.

Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the

judge's function is not himself to weigh the evidence and determine the truth of the matter," nor

is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat

Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the

motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry

performed is the threshold inquiry of determining whether there is the need for a trial."

*Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case." *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Statements that are devoid of any specifics, but replete with conclusions, are insufficient

to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d

Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to other areas of litigation." *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08 Civ. 4784, 2010 WL 423102, at *1 (S.D.N.Y. Feb. 5, 2010). "It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 519-20 (S.D.N.Y. 2007) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### b. Employment Discrimination Claims

Claims brought under the ADEA are analyzed under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000). Plaintiff must first establish a prima facie case of discrimination by showing that (1) he is part of the protected age group, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In the context of employment discrimination, the burden of establishing a prima facie case is minimal. *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir. 1999). "In order to support a prima facie case of failure to promote brought under . . . the ADEA, a plaintiff must show 'that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination.'" *Vara v. Mineta*, No. 01 Civ. 9311(RJH),

8

2004 WL 2002932, at *11 (S.D.N.Y. Sept. 7, 2004) (quoting *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997)).

If a prima facie case is established, "a presumption of discrimination arises and the burden shifts to the defendant, who must proffer some legitimate, nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Finally, if the defendant meets its burden of production, the burden again shifts to the plaintiff to "present sufficient evidence to permit a rational finder of fact to infer that the defendant's proffered reason is a pretext and that "age was the 'but-for' cause of the challenged adverse employment action . . . . " *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 507 (S.D.N.Y. 2010); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove . . . that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009))).

### III. Analysis
#### a. Dianne Philipps is Dismissed from this Action

Plaintiff brings suit against Philipps in her individual capacity and in her official capacity for the actions that she took in connection with the PCS position. Under the ADEA, an individual may not held liable under the ADEA. *See, e.g.*, *Farzan v. Wells Fargo Bank*, 2013 WL 2641643 (S.D.N.Y. 2013) (no individual liability under ADEA). Additionally, Plaintiff does not oppose the part of Defendants' motion which seeks to dismiss Philipps from the case. *Wasserman v. Maimonides Medical Ctr.*, 970 F. Supp. 183, 192 (E.D.N.Y. 1997) (lack of opposition is

"apparent[] conce[ssion] that the claim fails."). Accordingly, Defendants' motion to dismiss Philipps from this action is granted.

### b.  Claim of Discrimination in Appointment to Temporary PCS Position is Time-Barred

"In order to assert a claim under the ADEA, a charge must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination." *Affrunti v. Long Island Univ.*, 136 F. App'x 402, 403 (2d Cir. 2005); 29 U.S.C. § 626(d)(1)(B). Failure to file a claim within 300 days with the EEOC renders the claim time-barred. *Ayazi v. New York City Dept. of Educ.*, --- F. App'x ---, Nos. 13–639–cv (L), 13–641–cv (con), 2014 WL 114134, at *1 (2d Cir. Jan. 14, 2014).

Plaintiff filed his EEOC complaint on June 16, 2011. Three hundred days prior to June 16, 2011 is August 20, 2010, meaning that any conduct occurring before August 20, 2010 is time-barred. With regard to the vacated PCS position, Plaintiff's Second Amended Complaint states that Hoffman officially assumed the PCS role on February 1, 2011 and that "Plaintiff was denied promotion to that position." Sec. Amend. Compl. ¶ 39. It further states that "by refusing to promote Plaintiff to the [PCS] position, Defendant County has violated the ADEA." *Id.* at ¶ 44. In contrast, Plaintiff's Rule 56.1 Statement avers that "Hoffman commenced serving in the [the PCS role] at the point Dr. Fung [sic] retired, in the spring of 2010 . . . ." Pl.'s Reply to Def.'s Rule 56.1 Statement ¶ 41. It also states that in 2011, "Hoffman *remained* in the position, as she had been since Dr. Fung [sic] left." *Id.* at ¶ 164 (emphasis added).

"Discrete acts such as . . . failure to promote . . . are easy to identify[, and e]ach incident . . . constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The only instances that are actionable are those discrete acts which fall "within the appropriate time period." *Id.*  It is clear from the record that Hoffman

10

was appointed as the temporary lab director in April 2010 and as the provisional PCS in January 2011. *See* Gonos Dep. 42:25-43:12; Chapotkat Dep. 94:14-18; Sec. Amend. Compl. ¶ 36. As the temporary appointment occurred more than 300 days prior to Plaintiff's complaint to the EEOC, it is time-barred. Although it does not seem to be stated as such in Plaintiff's Complaint, to the extent Plaintiff is now making the argument that the April 2010 appointment was discriminatory, the claim fails because it is time-barred.

### c.   ADEA Claim against County of Rockland Fails as a Matter of Law

#### i.   Plaintiff's Prima Facie Showing

The ADEA protects individuals who are age forty and above. 29 U.S.C. § 631(a). Plaintiff falls into this range and is therefore part of the protected class. Although there was an issue with Plaintiff's education credentials for the open PCS position, that was not an issue at the time of Hoffman's appointment to the provisional PCS position. Hoffman was chosen instead of Plaintiff, and she was "significantly younger"[5] than Plaintiff. "The Supreme Court has held that a prima facie case of age discrimination can be grounded on the employer's selection of a candidate significantly younger than the plaintiff . . . ." *Vara*, 2004 WL 2002932, at *11. The Second Circuit has held that "where a plaintiff relies on a substantial age discrepancy between herself and her replacement, she must adduce some evidence indicating defendants' knowledge as to that discrepancy." *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 82–83 (2d Cir. 2005). It is not disputed here that Defendants were aware of the age difference between Plaintiff and Hoffman, and so the Court may assume that the Defendants were aware of the fact. *Saenger v.*

---

[5] Plaintiff states in his Second Amended Complaint only that Hoffman is "substantially younger" than Plaintiff.

11

*Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 508 n.8 (S.D.N.Y. 2010). Thus, Plaintiff has established his prima facie burden.

### ii. Defendants' Legitimate, Non-Discriminatory Reasons for Adverse Action

Defendants, too, satisfy their burden by establishing a legitimate, non-discriminatory reason for choosing Hoffman over Plaintiff. Gonos believed that Hoffman was more interested in the PCS position. Gonos had objective reasons for this perception, including that Hoffman submitted her application almost immediately after the position was announced while Plaintiff waited several months to submit his application. Further, Plaintiff advocated for the elimination of the exact position for which he applied. While Plaintiff's motivation behind that position was ostensibly to save the County money, it is certainly reasonable that Gonos inferred from this that Plaintiff was less motivated to occupy that position than Hoffman. Although Plaintiff states that Gonos could not possibly have thought Plaintiff was not interested in the position because Plaintiff had applied for the PCS position nineteen years prior when the opening was filled by Mr. Fung, a lot can change in nineteen years. It is not unreasonable for Gonos to believe that Plaintiff no longer had the same ambitions he did nineteen years before. Further, even if that was the case, Hoffman's actions compared to Plaintiff's objectively do evidence a reasonable conclusion that she was more interested in the position than Plaintiff. Philipps' perception was that Hoffman was more open to working with a reduced number of PCAs than Plaintiff. Although Philipps did not say that Plaintiff would not work with three PCAs, she noted that his reaction to the idea was "negative." Philipps Dep. 123:25-124:2.

"There is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview." *Byrnie v. Town of*

12

SA-12

*Cromwell Public Schools*, 243 F.3d 93, 104 (2d Cir. 2001). However, "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion." *Knight v. Nassau County Civil Serv. Comm'n*, 649 F.2d 157, 161 (2d Cir. 1981). "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn.'" *Byrnie*, 243 F.3d at 105 (quoting *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)). Here, Defendants have objective reasons for considering that Hoffman was the better candidate for the position. At this stage of the *McDonnell Douglas* burden-shifting analysis, Defendants burden is "one of production, not persuasion." *Reeves*, 530 U.S. at 142.

### iii.  Third Step of McDonnell Douglas Analysis

The third step of the *McDonnell Douglas* analysis requires Plaintiff to show that Defendants' proffered reasons are pretextual and that age was the but-for cause of the decision. *Saenger*, 706 F. Supp. 2d at 507. "[A]t [this] stage [], more than an age gap between the promoted and rejected employee is required to raise a triable issue of fact regarding discriminatory motivation." *Newsom-Lang v. Warren Int'l, Inc.*, 80 F. App'x 124, 126 (2d Cir. 2003). Plaintiff submits the fact that Gonos inquired about Plaintiff's age during the interview for the PCS position as evidence that there was a discriminatory motive behind the selection. However, it is not improper for an employer to inquire as to the candidate's retirement plans. Where a plaintiff uses a comment by defendant to show age-related bias, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007). In fact, "a company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them

13

as evidence of unlawful conduct." *Crowe v. Leroy Cent. Sch. Dist.*, 949 F. Supp. 2d 435, 446

(W.D.N.Y. 2013) (quoting *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992));

*Boston v. Blue Cross and Blue Shield of Kansas, Inc.*, 431 F. App'x 763, 767 (10th Cir. 2011)

("We . . . reject the notion that any mention of succession planning is tantamount to pretext;

compliance with the ADEA and succession planning need not be mutually exclusive"); *Jetter v.

Knothe Corp.*, 200 F. Supp. 2d 254, 264 n. 9 (S.D.N.Y. 2002) ("even if plaintiff was asked about

his retirement plans, inquiries about retirement plans do not necessarily show animosity towards

age." (internal quotation marks, citation, and alterations omitted)).

Moreover, it is discrimination on the basis of "inaccurate and stigmatizing stereotypes"

that the ADEA was enacted to protect, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993),

such as decreased productivity with age. The ADEA does not prevent employers from taking

age-related concerns into consideration. *See, e.g.*, *Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 853 (8th

Cir. 2005) ("factors other than age, but which may be correlative of age, do not implicate the

prohibited stereotype, and thus are not prohibited considerations."); *Boston v. McFadden Publ'g,

Inc.*, No. 09 Civ. 457(RJH), 2010 WL 3785541, at *11 (S.D.N.Y. 2010) ("even if plaintiff was

asked about his retirement plans, inquiries about retirement plans do[ ] not necessarily show

animosity towards age." (internal citation omitted)). Plaintiff argues that the comment about

Plaintiff's age was not due to a legitimate age-related purpose but rather that Gonos did not want

to be burdened with having to redo the PCS selection process again, which would occur sooner if

an older replacement were chosen. Even if that were the case, Gonos's concerns do not go to the

"stigmatizing stereotypes" protected by the ADEA. There were numerous other reasons why

Hoffman was chosen over Plaintiff, and Gonos's sole comment cannot be the basis of Plaintiff's

age discrimination claim. *See, e.g.*, *Tomassi*, 478 F.3d at 116 (court denied summary judgment

where defendant made age-related remarks to plaintiff every month); *see also Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (where "an employee in the protected age group [is] *hounded* about retirement despite evidence of adequate performance," "*repeated* references to retirement may permit a jury to infer discrimination." (emphasis added)).

Additionally, Plaintiff must show that this one comment proves that age was the "but-for" reason that Plaintiff was denied promotion to the position. Following the Supreme Court's ruling in *Gross v. FBL Financial Services*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177-78. The change "increases plaintiff's burden at the third stage of the *McDonnell Douglas* analysis to 'raise[ ] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a "but for" cause of [defendant's] decision to fire her.'" *Mattera v. JP Morgan Chase Corp.*, 740 F. Supp. 2d 561, 571 n. 8 (S.D.N.Y. 2010) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Plaintiff has not shown that age was the "but-for" reason that he was not promoted to the PCS position and no evidence of such could be discerned from the record before the Court. The only occurrence that alluded to Plaintiff's age throughout the selection process was with respect to one comment made during Plaintiff's interview, which the Court has already determined cannot be used to infer a discriminatory motive. Given the circumstances, including that Plaintiff applied for the position later than Hoffman, Hoffman was perceived as being more interested in the position, and that Plaintiff suggested eliminating the PCS position, it cannot be said that age was the "but-for" reason Hoffman was promoted over Plaintiff.

What is left, then, is two candidates for the PCS position who had different qualifications. Where a plaintiff opposes summary judgment solely on the basis that there is a discrepancy in

15

the qualifications of the two candidates, "the plaintiff's credentials would have to be so superior

to the credentials of the person selected for the job that no reasonable person, in the exercise of

impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

question." *Byrnie*, 243 F.3d at 103. Further, "the court must respect the employer's unfettered

discretion to choose among qualified candidates." *Presser v. Key Food Stores Coop., Inc.*, 316 F.

App'x 9, 11 (2d Cir. 2009). It cannot be said that Plaintiff's credentials were "so superior" to

Hoffman's that it is clearly unreasonable that she was chosen over Plaintiff. Hoffman earned a

Bachelor of Science from SUNY Oswego in 1993 where she majored in chemistry. She has

relevant work experience, including supervising a chemical analysis laboratory. She had been

working at the RCSD laboratory since August 1998. Plaintiff has similar academic credentials in

that he earned the equivalent of a Bachelor of Science Degree in India, where he majored in

physics, chemistry, biology, and mathematics. Although Plaintiff has worked as a PSA for longer

than Hoffman, both had spent a significant amount of time as a PCA. Furthermore, both had

received at least satisfactory performance reviews as PSAs. Based on this information, there is

no reasonable determination to be made that Plaintiff's credentials were "so superior" to those of

Hoffman.

Further, and finally, "[t]he fact that [] decision makers [are] close to [Plaintiff's] age, or

older, weakens any suggestion of age discrimination." *Pisana v. Merrill Lynch & Co.*, No. 93

Civ. 4541 (LMM), 1995 WL 438715, at *5 (S.D.N.Y. Jul. 24, 1995). Gonos is one year older

than Plaintiff and Hoffman is two years younger than Plaintiff. "Although this does not end the

inquiry, it provides an additional inference which plaintiff must overcome." *Drummond v. IPC*

*Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005). In addition to everything the Court

discussed above, Plaintiff fails to show that the decision to promote Hoffman was due to age discrimination.

**IV.    Conclusion**

For the above reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully requested to terminate the motion, Docket No. 36, and terminate the case.

Dated: April 4th, 2014                                     SO ORDERED:

       White Plains, New York

_____  04/4/14

NELSON S. ROMÁN

United States District Judge

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
AJAYVEER CHAPOTKAT

               Plaintiff,

     -against-

COUNTY OF ROCKLAND and DIANNE T.
PHILIPPS, in her capacity as Executive Director
of the Rockland County Sewer District No. 1,
               Defendants.
-------------------------------------------------------X

11 **CIVIL** 6209 (NSR)

**JUDGMENT**

Defendants having moved for summary judgment (Doc. #36) on January 15, 2014, and the

matter having come before the Honorable Nelson S. Román, United States District Judge, and the

Court, thereafter, on April 4, 2014, having handed down its Opinion and Order (Doc. #45) granting

Defendants' Motion for summary judgment, it is,

     **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order, dated April 4, 2014, Defendants' Motion for summary judgment is

granted; accordingly, the case is closed.

**Dated:** White Plains, New York
      April 7, 2014

                           CLERK
                        **RUBY J. KRAJICK**
                       **Clerk of Court**